IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:24-cv-899

| | | |
|---|---|---|
| BRENAYA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **COMPLAINT** |
| | ) | |
| TDP TRANSPORT CLT, LLC d/b/a THE DOUGHNUT PEDDLER, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

1. Brenaya Miller ("Plaintiff" or "Brenaya") began working for TDP Transport CLT, LLC d/b/a The Doughnut Peddler ("Defendant" or the "Company") as a Supervisor in or around April 2023. While on the job, Brenaya experienced repeated lewd sexual comments and propositions from her Regional Manager, which were egged on by another supervisor.

2. Brenaya repeatedly reported this sexual harassment, but the Company did not take her seriously. After receiving a demotion because of her protected activity, Brenaya retained counsel, who began speaking to the Company on her behalf. After continuous and regular protected activity, the Company illegally terminated Brenaya.

3. Plaintiff now turns to this Court to be made whole for her harms and losses. Plaintiff brings this action against the Defendant for violations of Title VII of the Civil Rights Act of 1964 (Count I) and Wrongful Discharge in Violation of North Carolina Public Policy (Count II).

1

## II. PARTIES, JURISDICTION AND VENUE

4. Plaintiff Brenaya Miller resides in Mecklenburg County, North Carolina.

5. TDP Transport CLT, LLC d/b/a The Doughnut Peddler is an Arizona limited liability company, with its principal office located at 450 N McClintock Drive Ste. 102 Chandler, AZ, 85226.

6. Defendant's Registered Agent is Nicole Hood Esq with the registered office at 450 N McClintock Drive Ste. 102 Chandler, AZ, 85226. Defendant's North Carolina registered office is at 176 Mine Lake Court, Suite 100, Raleigh, NC 27615, but Defendant's status with the NC Secretary of State is "revoked."

7. Venue is proper in the Western District of North Carolina, Charlotte Division, because: TDP Transport CLT, LLC d/b/a The Doughnut Peddler has a substantial presence in Charlotte, North Carolina and conducts a great deal of business in Charlotte, North Carolina. At all relevant times, Plaintiff worked for Defendant at its 700 Montana Drive, Charlotte, NC 28216 location. Moreover, the facts and circumstances of the case arise in Charlotte. But for Defendant's illegal conduct, Plaintiff would have continued working in Charlotte, North Carolina.

## III. FACTUAL STATEMENT

8. Brenaya began working for the Company in or around April 2023 as a driver. She was promoted to Supervisor for the Company's Charlotte location in or around May 2023.

9. On or around August 2, 2023, while preparing trucks outside with Regional Manager Michael Longshaw, Level Gerrald, another Supervisor, and another coworker, Longshaw approached Brenaya and said he believed Brenaya "has a penis." Longshaw then held his

2

pants and said it "looks as if [Brenaya] has some quarters in her pocket" that looked like a penis. Longshaw continued, saying Brenaya was "packing" and had "big balls."

10. Brenaya was understandably mortified by these comments. Later that evening, she texted Longshaw and told him how he offended her and that she didn't appreciate his crude, sexually charged comments.

11. Longshaw responded, stating he was simply joking around. Longshaw took things a step further and claimed his behavior was "flirting" and told Brenaya that be believed she was a "very attacked woman" who "got it [in] all the right places."

12. Longshaw had previously sexually harassed Brenaya. Throughout her short time with the Company, Longshaw would routinely rub Brenaya's shoulders and make sexual comments about her body.

13. At one point, Longshaw offered Brenaya money in exchange for sex, which she vehemently declined. Gerrald encouraged this behavior and stated to Brenaya that "no woman should be broke," implying she should accept Longshaw's proposition to sleep with her in exchange for money.

14. Brenaya informed the other managers about Longshaw's sexual harassment, but they did not take her seriously. Brenaya then requested Regional Manager Christina's contact information, but Brenaya never received it. Brenaya later received a text from Tim, one of her managers, stating that Christina did not want drivers having her personal phone number.

15. On or around August 6, 2023, Brenaya received her paycheck and noticed it was short. She contacted Gerrald to complain about this, and then she complained to Longshaw shortly thereafter. Gerrald reacted angrily and began berating Brenaya for calling him.

16. Brenaya's paycheck was short in retaliation for her protected activity.

17. On or around August 7, 2023, Brenaya arrived at work as usual. She was greeted by Gerrald. Gerrald immediately told Brenaya she was no longer a supervisor and was being demoted. When Brenaya questioned this decision, Gerrald responded that it was due to her texting him about her paycheck, and that she "wasn't a good fit." This was clearly retaliation for rejecting sexual advances and pushing back against workplace sexual harassment.

18. Brenaya retained counsel, and on or around August 29, 2023, her lawyers sent a letter outlining the illegal harassment and discrimination she had been facing at work. After no reply, Brenaya and her counsel contacted Aimee Fujimoto in HR on September 12, 2023, to make sure she was aware of Brenaya's protected activity and complaints.

19. After this protected activity, the retaliation only got worse for Brenaya. Gerrald began to actively harass Brenaya any chance he could in an attempt to force her to quit. In one instance, he switched her to a route he knew didn't fit her schedule and told her to either do the route or quit her job. Brenaya, wanting to keep her job, began working the new route. She needed the paycheck.

20. On or around October 9, 2023, Brenaya's counsel again engaged in protected activity on her behalf and complained about the increase in retaliation and harassment.

21. Despite Brenaya's repeated complaints and her complaints through counsel, she continued to be harassed, leading her counsel to again reach out to the Company on Brenaya's behalf to discontinue the harassment on or around October 12, 2023. The more protected activity Brenaya engaged in, the more the Company wanted her gone.

22. On or around October 17, 2023, the Company terminated Brenaya. Gerrald retrieved

a weeks-old video tape of Brenaya driving and claimed she was operating the vehicle unsafely and terminated her on the spot.

23. Prior to her termination, Brenaya had never been counseled or reprimanded by the Company for any alleged driving issues.

24. This alleged termination reason is an obvious pretext for illegal discrimination and retaliation. Following her protected activity, the Company was actively looking for something, anything, as cover for the illegal firing.

25. On November 30, 2023, Brenaya filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC.")

26. On July 12, 2024, the EEOC issued Brenaya her Determination and Notice of Right to Sue letter.

## IV. LEGAL CLAIMS

### Count I
(*Violation of Title VII of the Civil Rights Act of 1964*)

27. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

28. Plaintiff is, and at all relevant times was, an employee covered by the protections of Title VII of the Civil Rights Act of 1964 ("Title VII") as defined in 42 U.S.C. § 2000e(f).

29. Defendant had more than fifteen (15) employees at all relevant times.

30. Defendant is, and at all relevant times was, an employer as defined in 42 U.S.C. § 2000e(b).

31. Title VII prohibits discrimination based on sex.

32. Defendant violated Title VII by subjecting Plaintiff to a hostile work environment based upon her sex.

33. Michael Longshaw's sexist comments were directed at Plaintiff.

34. He directed those comments towards Plaintiff because she is a female.

35. Plaintiff engaged in protected activity when she repeatedly complained to management about Longshaw's conduct.

36. Defendant violated Title VII by terminating Plaintiff's employment in retaliation for her protected activities, including her own complaints and those made by counsel.

37. Defendant violated Title VII by terminating Plaintiff's employment on the basis of her sex.

38. Defendant violated Title VII by subjecting Plaintiff to quid pro quo sexual harassment and further altering the terms and conditions or her employment by reducing her hours, demoting her, and terminating her employment.

39. Defendant violated Title VII by reducing her hours and pay on the basis of her sex.

40. Defendant violated Title VII by demoting her on the basis of her sex.

41. Defendant violated Title VII by reducing her hours and pay in retaliation for her protected activities, including her own complaints and those made by counsel.

42. Defendant violated Title VII by demoting her in retaliation for her protected activities.

43. As an an actual, proximate, and foreseeable consequence of Defendant's conduct, Plaintiff has suffered lost income, diminution in expected earnings, emotional distress, anxiety, humiliation expenses, reputational harm, and other damages and is entitled to recover compensatory damages in an amount to be determined at trial.

44. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

### Count II
#### *(Wrongful Discharge in Violation of Public Policy)*

45. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

46. Plaintiff was an at-will employee of Defendant.

47. Defendant employed at least fifteen (15) employees at all relevant times.

48. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of race, religion, color, national origin, age, sex or handicap.

49. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because of her sex.

50. The public policy of North Carolina also prohibits prostitution or any similar requirement to engage in sexual activity as a part of one's employment. *See* NCGS 14-205.1. The public policy of the State of North Carolina prohibits an employer from terminating an employee for refusing to accede to sexual advances. *Id.*

51. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because of her refusals to accede to sexual advances.

52. Moreover, the public policy of North Carolina, codified in the North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1 et seq., requires employers to pay their employees all promised wages, including commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments.

53. North Carolina law allows employees to complain internally or externally about violations of the State's wage and hour act. N.C.G.S. § 95-25.22; N.C.G.S. § 95-241.

54. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because she complained about her pay.

55. North Carolina public policy also prohibits an employer from firing an employee for consulting with or hiring counsel in connection with potential claims against the employer. *See* N.C. Ethics Rules, RULE 5.6 RESTRICTIONS ON RIGHT TO PRACTICE.

56. Defendant violated the public policy of North Carolina as set forth above by terminating Plaintiff because she obtained counsel.

57. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered lost back and front pay, lost benefits, diminution in her earning capacity, severe emotional distress, damage to her reputation, anxiety, depression, embarrassment, humiliation, and her peace of mind has been disturbed.

58. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiff's rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct

alleged above. As a result of Defendant's conduct, Plaintiff is entitled to recover punitive damages.

## JURY TRIAL DEMANDED

WHEREFORE, the Plaintiff prays the Court to:

1. Enter a judgment against Defendant and order Defendant to pay Plaintiff damages for all harms and losses;

2. Award Plaintiff punitive damages pursuant to 42 U.S.C. § 1981a *et seq.* and 42 U.S.C. § 1981 *et seq*.

3. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.*

4. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

5. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

6. Grant Plaintiff a trial of this matter by a jury.

This the 9th day of October, 2024.

> */s/ Sean F. Herrmann*
> Sean F. Herrmann
> North Carolina Bar No. 44453
> Kevin P. Murphy
> North Carolina Bar No. 41467
> Herrmann & Murphy, PLLC
> 400 Clarice Ave., Ste. 100
> Charlotte, North Carolina 28204
> Phone: 704-940-6399
> Fax: 704-940-6407
> Email: kevin@herrmannmurphy.com
> Email: sean@herrmannmurphy.com
> *Attorneys for Plaintiff*